Akten Realty Corporation v. Commissioner.
Akten Realty Corp. v. Commissioner
Docket Nos. 69001 and 70460.
United States Tax Court
T.C. Memo 1960-27; 1960 Tax Ct. Memo LEXIS 262; 19 T.C.M. (CCH) 150; T.C.M. (RIA) 60027; February 24, 1960
*262 Samuel S. Reinish, Esq., 350 Broadway, New York, N. Y., for the petitioner. Norman L. Rapkin, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined the following deficiencies in income tax: Year
Amount
1953
$ 750.00
1954
1,425.00
1955
1,050.00
The only issue for decision is the propriety of the Commissioner's determination which disallowed officers' salaries as deductions in the taxable years in excess of $2,500 per year. Findings of Fact Petitioner is a corporation organized in 1945. Its income tax returns for 1953, 1954 and 1955 were filed on an accrual basis with the director of internal revenue for the lower Manhattan district of New York. During the years in issue petitioner owned a single piece of rental property located at 124 West 55th Street, New York, New York. The property was purchased in 1945 and involved a cash investment of some $30,000 and the assumption of a substantial mortgage. Kate Lippert and Nettie Kasdan each contributed $15,000 to petitioner and each owned 50 per cent of petitioner's stock in the years in question. Kate was president and Nettie *263 was vice president of petitioner. Their respective husbands, Albert Lippert and Julius Kasdan were secretary and treasurer. Julius and Kate are brother and sister. In 1953 petitioner paid Kate and Nettie each $2,500 salary and in 1954 and 1955 each was paid $3,000 per annum. Albert was sole owner and manager of the Royal Ruching Company, New York, New York, which employed between 4 and 10 persons. In addition, he was the sole owner of Al's Parking Lot in New York City. Petitioner's business address was the same as that of Royal Ruching Company. Julius was a 50 per cent partner in the ABC Rubber Specialties Company, Brooklyn, New York, which employed approximately 43 persons, with regard to which he supervised all production. The Lipperts and Kasdans discussed petitioner's affairs at informal meetings, family functions, luncheons and in the general course of their family relationship. No minute book was kept of directors' or officers' meetings and the business of petitioner was handled in an informal inter-family manner. Until 1951 Albert managed the building owned by petitioner. In that year he "decided I better get an agent" and the management firm of Cushman & Wakefield, *264 Inc. was employed. Albert signed the management agreement with Cushman & Wakefield, Inc. on behalf of petitioner. Pursuant to the agreement the duties and responsibilities of Cushman & Wakefield, Inc. were in general as follows: renting apartments; negotiating and preparing leases; handling complaints; billing and collecting rents; instituting legal actions; maintaining books of account; preparing and filing rent control forms, monthly and annual statements; handling alterations and repairs; maintaining supplies; contracting and paying for fuel, light and power and miscellaneous expenses. The Lipperts and Kasdans participated in decisions on repair and replacement items of more than $100 and personally did some purchasing of items such as refrigerators. Cushman & Wakefield, Inc. terminated its agreement with petitioner and ceased being its managing agent in February 1958 because the Board of Directors of Cushman & Wakefield, Inc. decided to discontinue managing apartment and residential properties. During the years 1953, 1954 and 1955 Cushman & Wakefield, Inc. received the following fees from petitioner: $2,140.18 in 1953; $2,289.48 in 1954; and $2,388.23 in 1955. During the *265 years 1953, 1954 and 1955 petitioner employed a superintendent who lived on the premises and who showed apartments to prospective tenants and furnished all other services normally furnished by a superintendent. During the years 1953, 1954 and 1955 the superintendent received the following wages from petitioner in addition to being furnished a rent-free apartment having an average annual rental value of approximately $800; $3,816 in 1953; $3,874 in 1954; and $4,203.26 in 1955. Petitioner's net income (after all deductions including officers' salaries, management fees and superintendent's wages) for the years 1953, 1954 and 1955 were as follows: $3,986.29 in 1953; $1,861.81 in 1954; and $3,807.22 in 1955. Checks drawn on petitioner were either signed by Albert or Julius. Neither Kate nor Nettie signed checks. Kate and Nettie occasionally visited the building owned by petitioner, made suggestions from time to time concerning its management, now and then showed apartments to prospective tenants and in general kept themselves informed about petitioner's business. Of the four officers of petitioner, Albert was the most important so far as making decisions and carrying them through *266 was concerned. Neither he nor Julius was paid a salary by petitioner. Petitioner has never paid any dividends. On its income tax returns petitioner claimed as deductions the amounts paid in each of the taxable years to Kate and Nettie. The Commissioner disallowed the claimed deductions in excess of $2,500 in each year. Opinion The question of what constituted reasonable compensation for the services here involved is a pure question of fact and the burden is on the petitioner to overcome the presumption of correctness attaching to the Commissioner's determination that no more than $2,500 in each year was reasonable. Petitioner has introduced no evidence establishing what would ordinarily be paid for like services in similar enterprises. Petitioner is a family corporation. It paid no dividends. On the record before us it appears that the actual management of the rental property in important aspects was conducted by the rental agent, the superintendent of the building and by Albert Lippert. The services of Kate and Nettie, the payments for which are here in question, were "rather inconsiderable" and we cannot say that the $1,250 per year which the Commissioner has allowed to each *267 was an "arbitrary estimate of the value" of their services. , affirming a Memorandum Opinion of this Court [. Decisions will be entered for the respondent.